KING, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 30. Although I agree with the majority's conclusion that the Mississippi Public Service Commission (MPSC) lacked jurisdiction in this case, I respectfully disagree with the majority's statement in footnote 7 that The Door Shop failed to raise Mississippi Code Section 15-1-5 as an affirmative defense. The Alcorn County Electric Power Association (ACE) filed its complaint on January 17, 2014. The Door Shop filed its answer on May 28, 2014, in which it stated, "Defendant pleads all applicable Statute of Limitations." Subsequently, the Mississippi Legislature enacted Mississippi Code Section 77-5-259, which provides,
 

 In any action or regulatory proceeding arising from any overbilling or underbilling by a corporation, no collection, reimbursement, or other relief may be awarded for underbillings or overbillings occurring more than six (6) years prior to the commencement of the action or regulatory proceeding.
 

 Miss. Code Ann. § 77-5-259
 
 (Rev. 2018). The Door Shop, in its response to ACE's
 motion for summary judgment, argued that Section 77-5-259 barred recovery for any underbilling that occurred more than six years from the date this suit was filed, January 17, 2014. Although I agree with the majority's finding that Section 77-5-259 does not apply retroactively, I would find that The Door Shop sufficiently raised a statute-of-limitations defense.
 

 ¶ 31. The Door Shop pleaded all applicable statute of limitations in its answer to ACE's complaint. In its response to ACE's motion for summary judgment, The Door Shop again argued that this case was barred by the statute of limitations. Mississippi Code Section 15-1-49 provides a general three-year statute of limitations to "all actions for which no other period of limitation is prescribed."
 
 Miss. Code Ann. § 15-1-49
 
 (Rev. 2012). Additionally, Mississippi Code Section 15-1-5 states,
 

 The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.
 

 Miss. Code. Ann. § 15-1-5 (Rev. 2012). Pursuant to this State's notice-pleading standard, The Door Shop's answer was sufficient to preserve the statute of limitations as a defense.
 
 See
 
 M.R.C.P. 8(c), (e) ;
 
 Scafidi v. Hille
 
 ,
 
 180 So.3d 634
 
 650 (Miss. 2015) ("Mississippi is a 'notice pleadings' state.... 'Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.' "). "Just as Rule 8(a) requires only that the plaintiff give the defendant notice of the claims, Rule 8(c) requires only that the defendant give the plaintiff notice of the defense." M.R.C.P. 8 Advisory Comm. Notes. I would find that, although The Door's Shop referenced the incorrect statute in its motion for summary judgment, it sufficiently raised as an affirmative defense that the general statute of limitations barred recovery of underbilled amounts.
 

 ¶ 32. Further, I respectfully dissent from the majority's holding that ACE's amended bylaw applied retroactively. I would find that a genuine issue of material fact exists regarding whether ACE empowered itself to recover undercharged amounts prior to 2009.
 

 ¶ 33. The Door Shop applied for new services from ACE in October 2004 and, in doing so, bound itself to ACE's bylaws. The Door Shop submitted full payment for the amount ACE billed each month. However, due to a clerical error, ACE had undercharged The Door Shop from 2004 to 2011. Pursuant to Article II, Section 12, of ACE's bylaws, upon discovering the error in 2011, ACE corrected its mistake and billed The Door Shop for the undercharged amount, totaling $25,685.58. Article II, Section 12, of ACE's bylaws provides,
 

 Section 12. Under Billing.
 
 In the event that a billing or other error by [ACE] results in a member being undercharged for the actual amount of electricity provided to the member by [ACE], then upon discovery of the error, and regardless of the cause or duration of the error, [ACE] will issue a supplemental billing reflecti[ng] the corrected amount owed by the member; and the member shall remit payment to [ACE] for such supplemental billing....
 

 However, Article II, Section 12, was adopted in 2009. Prior to 2009, and when The Door Shop applied for new services, ACE's bylaws contained no provision authorizing itself to collect undercharged amounts. The Door Shop argues that, because
 that provision of the bylaws was not adopted until five years after it applied for service, it should only be responsible for payment from the date that the bylaw was adopted.
 

 ¶ 34. The majority finds that, regardless of when Article II, Section 12, was adopted, Article VII, Section 12, of ACE's 1997 bylaws authorized ACE to collect undercharged amounts. I disagree. Article VII, Section 12, states,
 

 Section 12. Purchase of Electric Energy.
 
 Each member shall, as soon as electric energy is available, purchase from [ACE] all electric energy used on the premises described in the application for membership, and shall pay promptly therefore monthly at such rates as may be fixed by the Board of Directors from time to time.
 

 The majority reasons that the above provision, which had been adopted in 1997, required members to pay for all electricity used on the premises. Although Article VII, Section 12, states that the member should pay for "all electric energy used on the premises," the provision contained no procedure to collect the undercharged amount until the adoption of the new bylaw in 2009.
 
 See
 

 Nibco Inc. v. City of Lebanon
 
 ,
 
 680 F. App'x. 428
 
 , 430 (6th Cir. 2017). In
 
 Nibco
 
 , a misapplied multiplier caused a municipality to underbill a customer for electricity over a period of sixty-five months, resulting in an undercharge of $1.27 million.
 

 Id.
 

 The Sixth Circuit held that, because the City of Lebanon's ordinance was silent about any procedure or protocol for addressing or correction billing mistakes, it had no authority to justify backbilling.
 

 Id.
 

 at 435
 
 .
 

 ¶ 35. Similarly, in this case, prior to 2009, ACE's bylaws contained no provision authorizing recoupment for undercharges. Evidence of this is shown by ACE's amendment of its bylaws in 2009, which stated that upon discovery of the error, ACE would issue a supplemental billing reflecting the correct amount owed by the member. Thus, the 2009 amendment provided ACE's procedure to recover for undercharged amounts. The bylaw adopted by the Board in 2009, if applied retroactively, would enable the Board to recover for billing errors dating back to ACE's inception in 1934. That interpretation would be neither reasonable nor fair. In a similar case, the Supreme Court of Georgia reasoned,
 

 It is simply unjust to require an innocent consumer to bear the entire cost of a supplier's mistake where, as here, there is no time limit on back billings. Armed with absolute immunity for an indefinite time, the supplier has little incentive to establish reasonable procedures to guarantee that its meters are properly calibrated or that its bills are computed accurately.
 

 Brown v. Walton Elec. Membership Corp.
 
 ,
 
 272 Ga. 453
 
 ,
 
 531 S.E.2d 712
 
 , 713 (2000). Here, The Door Shop agreed to abide by ACE's bylaws when it applied for service in 2004. However, not until 2009 did ACE authorize itself to recover for underbilled amounts. The Door Shop promptly paid in full for the amount of electric energy for which it was billed each month and, through no fault of its own, was undercharged for the amount of electricity it had used. It would be unjust to require The Door Shop to bear the cost of ACE's mistake for an indefinite time. Because prior to 2009 ACE's bylaws had no provision authorizing it to collect on underbilled accounts, I would find that a material issue of fact exists about whether ACE is able to collect any underbilled amount prior to that point. Therefore, I would reverse the trial court's grant of summary judgment
 and would remand this case for a trial on the merits.
 

 KITCHENS, P.J., JOINS THIS OPINION.